**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | | |
|---|---|---|
| **CHARLES W. WILLIAMS and** | * | **CIVIL ACTION NO. 06-1056** |
| **EDITH WILLIAMS** | | |
| | | |
| **Versus** | * | **JUDGE JAMES** |
| | | |
| **DAIMLERCHRYSLER CORP and** | * | **MAGISTRATE JUDGE HAYES** |
| **RUSTON CHRYSLER DODGE JEEP** | | |

## MEMORANDUM RULING

Before the undersigned Magistrate Judge, on reference from the District Court, is a

Motion to Remand[1] filed by Plaintiffs, Charles W. Williams and Edith Williams (Doc. #8).

Defendants opposed and requested a hearing on the motion. A hearing was held before the

undersigned on September 1, 2006.

In addition to the Motion to Remand, a Motion to Amend the Complaint was filed by

Plaintiffs (Doc. #19). At the September 1, 2006 hearing, the Court also heard arguments on the

Motion to Amend.

After listening to the arguments of counsel and reviewing the law and the evidence

submitted by each side, it is the ruling of this Court that Plaintiff's Motion to Remand (Doc. #8)

be **GRANTED.** Because this court lacks jurisdiction over these proceedings, no ruling will be

made on Plaintiff's Motion to Amend (Doc. #19).

## STATEMENT OF FACTS

---

[1]As this is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive
of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil
Procedure, this ruling is issued under the authority thereof, and in accordance with the standing
order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a)
and L.R. 74.1(W).

Plaintiffs filed suit on May 25, 2006, in the Fourth Judicial District Court of Ouachita Parish, State of Louisiana, seeking to recover damages for injuries sustained on February 10, 2006. The claims stem from an accident involving a 2005 Dodge Ram 2500 HD Quad Cab SLT pickup truck that Plaintiffs purchased on July 27, 2005. Plaintiffs named DaimlerChrysler Corporation ("DCC"), manufacturer of the truck, and Ruston Chrysler Dodge Jeep ("Ruston"), the selling dealership, as defendants.

On the date of the incident, Plaintiff Charles Williams ("Williams"), stopped the truck in the parking lot of Excell Food and Gas in West Monroe and, according to the complaint, placed the gear shift lever in "Park." With the engine running, Williams got out of the truck and went to the rear to get something from the back of the vehicle. As he was standing behind the truck, it suddenly began to move in reverse, striking the plaintiff and causing his injuries.

Sometime after the incident, Plaintiffs received a letter notifying them that DCC had instituted a recall campaign for the truck to install an "out-of-Park" alarm system to alert drivers who attempt to leave the vehicle while the engine is running and fail to place the shift lever completely into the "Park" position. Plaintiffs assert claims of strict liability, negligence, products liability, failure to warn, and redhibition against DCC and Ruston. In addition, paragraph 8 of the petition states that the vehicle had a "defective condition," which allowed the gear shift lever suddenly to move into reverse after the vehicle had been placed in "Park." These facts adequately allege a defect either in design or in manufacture.

On June 23, 2006, DCC removed the case to this Court, asserting that Ruston was improperly joined and that the Court had jurisdiction pursuant to 28 U.S.C. § 1332. On July 12, 2006, Plaintiffs filed the current Motion to Remand. On July 27, 2006, the undersigned granted Defendants' Motion for Hearing. On August 16, 2006, before the hearing was held, Plaintiffs

also filed a Motion to File Supplemental and Amending Petition for Damages. In their proposed Amended Complaint, Plaintiffs allege that on April 6, 2006, Ruston improperly performed the recall service of installing the "out-of-Park" alarm system. The Motion to File Supplemental and Amending Petition is also before the Court.

## LAW AND ANALYSIS

Motion to Remand

The Judiciary Act of 1789 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Original federal diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996). This diversity of citizenship must be complete, meaning that the citizenship of every plaintiff must be diverse from the citizenship of every defendant. *See Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992)(citations omitted). For diversity purposes, a corporation is deemed to be a citizen of its state of incorporation and the state in which it maintains its principal place of business. 28 U.S.C. § 1332(c)(1). After removal of a case, the plaintiff may move for remand, and "[if] it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Any jurisdictional determination is based on the claims in the state court petition as they existed at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).

DCC is a Delaware corporation with its principal place of business in Michigan. Ruston

is a Louisiana corporation with its principal place of business in Louisiana. Although Ruston is a Louisiana corporation and Plaintiffs are Louisiana residents, Defendants oppose the Motion to Remand, again arguing that Ruston is an improperly joined defendant.

There are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. Only the second method is at issue in this case. That second test asks whether the defendant has demonstrated that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against the in-state defendant. *Smallwood*, 385 F.3d at 573; *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003).

The "no reasonable basis" contest may take place in two different settings. In the first, the defendant challenges the adequacy of the plaintiff's pleadings, without the submission of evidence. The court conducts a Rule 12(b)(6)-type analysis to determine whether the complaint states a claim under state law against the in-state defendant. *Smallwood*, 385 F.3d at 573. Any ambiguities in state law must be resolved in favor of the plaintiff. *Gray v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 405 (5th Cir. 2004).

Merely pleading a valid state law claim, or one whose validity is reasonably arguable, against the resident defendant does not necessarily mean that the joinder of the resident defendant is proper. The second setting for the "no reasonable basis" contest permits the defendant to challenge the plaintiff's allegations and attempt to demonstrate by summary judgment-type evidence that the plaintiff is unable to prove all of the facts necessary to prevail. The court has discretion in those circumstance to pierce the pleadings and analyze the improper joinder claim based on that evidence. *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004).

Defendants argue that Ruston was improperly joined because Plaintiffs cannot establish a

reasonable possibility of recovery against Ruston under Louisiana law.

The Louisiana Products Liability Act ("LPLA") serves as the exclusive state remedy for individuals who have been harmed by product defects. *See* La. R.S. 9:2800.52. Under Louisiana law, design defect claims are properly brought against the product's manufacturer. *See Boone v. General Mtrs Acceptance Corp.*, 682 F.2d 552 (5th Cir.1982). The only exception to the general rule that a selling dealer is not liable in products liability applies to the seller who is deemed a "professional vendor" under Louisiana law. *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1413 n.9 (5th Cir.1993). "A professional vendor is a retailer who does more than simply sell a certain product or products; it must engage in practices whereby it is capable of controlling the quality such that the courts are justified in treating the retailer like a manufacturer." *Davis v. Burlingame*, 607 So.2d 853, 856 (La.App. 2 Cir.,1992) (citing *Nelton v. Astro-Lounger Mfg. Co., Inc.*, 542 So.2d 128, 132 (La.App. 1 Cir.,1989)). The LPLA defines "manufacturer" as

> (a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.
>
> (b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.
>
> (c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.
>
> (d) A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer.

La. R.S. 9:2800.53. Ruston contends that it had no influence or input into the design or manufacture of any vehicle or component part manufactured by DCC, and that Ruston is neither an importer, a distributor, nor the "alter ego" of DCC. Plaintiffs have provided no evidence to the contrary. Ruston does not meet the definition of a professional vendor.

In their Motion to Remand, Plaintiffs state that they have made a claim for redhibition pursuant to Louisiana law against Ruston and that there are "key issues as to possible maintenance work" provided by Ruston.

> Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had she known of the vice. CC Art. 2520; *Holloway v. Gulf Motors, Inc.,* 588 So.2d 1322 (La.App. 2d Cir.1991). Inadequate installation of equipment may constitute a redhibitory defect. *Calandro's Supermarket v. Hussman Refrig.,* 525 So.2d 316 (La.App. 1st Cir.1988).
>
> The buyer must prove that the vice existed before the sale. CC Art. 2530; *Holloway v. Gulf Motors, Inc.,* supra. Proof of this fact may be made either by direct evidence or by circumstantial evidence giving rise to a reasonable inference that the defect existed at the time of the sale. *Holloway v. Gulf Motors, Inc.,* supra; *Reid v. Leson Chevrolet Co., Inc.,* supra. The circumstantial evidence need not negate all other possible causes. *Rey v. Cuccia,* 298 So.2d 840 (La.1974); *Foster v. Craig Equipment Co.,* 550 So.2d 818 (La.App. 2d Cir.1989).
>
> Minor defects alone do not constitute redhibitory defects. Even though vices may be minor or may have been repaired, multiple defects collectively may support redhibition. *Young v. Ford Motor Co., Inc.,* 595 So.2d 1123 (La.1992); *Holloway v. Gulf Motors, Inc.,* supra.
>
> In situations where a new vehicle presents such defects as would render its use so inconvenient and imperfect that it is reasonable to conclude the buyer would not have purchased the automobile had she known of the defects, the buyer is entitled to a rescission of the sale instead of merely a reduction in the price. *Young v. Ford Motor Co., Inc.,* supra.

*Arnold v. Wray Ford, Inc.*, 606 So.2d 549, 552 (La.App. 2 Cir.,1992).

Plaintiffs purchased the truck from Ruston on July 27, 2005. The accident occurred on February 10, 2006. The "Safety Recall E17 Out-of-Park Alarm System" notification was issued by DCC after the date of the accident, in March 2006. Steve Brennan, Ruston's Manager, has provided an affidavit stating that Ruston had no knowledge of any defect in the truck prior to or at the time the truck was sold to Plaintiffs. Doc. #14-2 pg. 2. Plaintiffs have provided no evidence to suggest that Ruston knew or should have known of the alleged defect in the vehicle

at the time or sale or prior to the recall notification; therefore, any claim in redhibition is governed by Louisiana Civil Code Article 2531, covering the liability of good faith sellers.

> The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices. La. C.C. Art. 2531 . A good faith seller is to be afforded a reasonable opportunity to repair the defect in the light of the particular circumstances of each case. Factors to be considered are whether the buyer was furnished substitute transportation, the extent to which the buyer's lifestyle was disrupted by the unavailability of the vehicle, the nature of the defect, the difficulty of remedy, and the number of unsuccessful repair attempts. *Dreher v. Hood Motor Co., Inc.,* 492 So.2d 132, 137 (La.App. 1st Cir.1986), citing *Dickerson v. Begnaud Motors, Inc.,* 446 So.2d 536 (La.App. 3d Cir.1984), writ denied. What constitutes a reasonable opportunity to repair a defective product is a question for the finder of fact. *Reid v. Leson Chevrolet Co., Inc.,* 542 So.2d 673 (La.App. 5th Cir.1989).

*Arnold* at 551-52.

Plaintiffs took the truck to Ruston to have the recall service performed on April 6, 2006. The purpose of the recall was to install computer software which provides an "Out-of-Park alarm" feature on the vehicle. This "Out-of-Park alarm" is designed to beep the horn and flash the headlights and shift indicator if a driver tries to exit a running vehicle without fully placing the shift lever into the "Park" position. Defendants argue that the installation of the software repaired the problem (which they deny constituted a defect). However, the Plaintiffs' complaint, viewed in the light most favorable to them, states a claim for a defect in the design or manufacture of the vehicle, i.e., Plaintiffs claim that Mr. Williams placed the gear shift lever fully into the park position, but that the vehicle suddenly shifted out of park and into reverse. Thus, Plaintiffs claim that even if the software installation now provides a warning about the problem, there was still a defect either in the design or manufacture of the gear shift lever.

The undersigned also notes the following language contained in Information Report E17 supplied by Defendant in opposition to the motion to remand and explaining the reasons for the

recall:

> With nearly 93% [of the complainants] previously owning one or more pickup trucks, and an average age of over 53 years old, this group likely has developed learned behaviors with respect to shifting column mounted automatic transmissions. Prior versions of the Dodge Ram pickup, as well as most competitive brands, employed a radial shift pattern about the axis of the steering column. The subject vehicles employ a slightly fore-aft shift pattern, which requires a different motion to shift the column mounted shifter.

Doc. #14-5 pg. 15. DCC contends that no design defect exists and that these incidents occur due to driver error; however, the facts presented to the undersigned could support a claim that the design of the gear shift lever was defective in that it altered the type of motion needed to perform shifting from that previously used by DCC and from that used by most other manufacturers, and that no warning or training regarding the change was given to the purchasers of the vehicles. Plaintiffs also flatly deny driver error of any kind and claim that the problem is cause by a defect that actually allows the gear shift lever to slip out of park and into reverse. Without assessing the likelihood of success on these claims, the undersigned notes that Plaintiffs have stated a cause of action against Ruston in redhibition, and that the evidence presented by the parties shows that there are, at least at this early stage of the litigation, issues of fact which will need to be resolved before a determination can be made on whether the gear shift mechanism was defectively designed or manufactured, whether any warnings should have been given and the adequacy of those warnings, and whether the repair made by Ruston and/or DCC corrected any alleged defect.

Defendants argue that Plaintiffs do not have a claim in redhibition because Plaintiffs continue to use the vehicle. However, the Civil Code states that while a buyer who obtains rescission because of a redhibitory defect is bound to return the thing to the seller, he is not bound to deliver it back until all his claims or judgments arising from the defect are satisfied. La. C.C. Art. 2532.

In addition, even if Plaintiffs do not finally carry their burden of proof that they are entitled to rescission of the sale, their claim against Ruston also encompasses possible reduction of the purchase price, a remedy which was allowed in both of the cases cited by Defendants even though redhibition was deemed inappropriate because the vehicles in question had been used for a lengthy time prior to trial despite the alleged defects. *See Coffey v. Cournoyer Oldsmobile-Cadillac-Jeep GMC*, 484 So.2d 798 (La. App. 1 Cir.1986); *Nelkin v. Piotrowski*, 448 So.2d 173 (La. App. 5 Cir. 1984).

Therefore, for the reasons stated above, Ruston has not been improperly joined and jurisdiction in this Court is not proper. Plaintiffs' Motion to Remand (Doc. #8) is **GRANTED**.

Since Plaintiffs' Motion to Remand is granted on the basis of lack of subject-matter jurisdiction, this court has no jurisdiction to rule on Plaintiffs' Motion to Amend (Doc. #19).

THUS DONE AND SIGNED at Monroe, Louisiana, this 25th day of September, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE